# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

WILLIAM LONG, et al.,

    Plaintiffs,

v.                                  CASE NO. 4:08cv26-RH/WCS

HOLLY BENSON, et al.,

    Defendants.

_____/

## **PRELIMINARY INJUNCTION**

The plaintiff Clayton Griffin has moved for a preliminary injunction requiring the defendant Holly Benson, as Secretary of the State of Florida Agency for Health Care Administration, to provide Medicaid benefits to which Mr. Griffin claims he is entitled. I grant the motion.

### I. Facts

In 2004, at the age of 51, Mr. Griffin suffered a stroke that left him paralyzed on the left side. He is confined to a wheelchair and needs assistance to get in and out of bed, to shower, to dress, and to use the bathroom.

When this lawsuit was filed, Mr. Griffin was living in a nursing home. The

cost of the nursing home was covered by the state's Medicaid program. Mr. Griffin had applied for and been determined eligible for a Medicaid waiver program. Under the waiver program, an individual receives services in the community rather than in an institution. This is what Mr. Griffin preferred. But the state has a long waiting list for the waiver program; no slot was available for Mr. Griffin.

On June 14, 2008, Mr. Griffin moved out of the nursing home and began living by himself in an apartment complex despite the unavailability of Medicaid benefits. A certified nursing assistant goes to his apartment for two hours in the morning and two hours in the evening to assist Mr. Griffin with activities of daily living. He has a visiting nurse and visiting physician who provide needed medical care. Mr. Griffin spends time in his apartment but also goes out into the community using public transportation. He has friends and relatives in the apartment complex. Mr. Griffin's quality of life—at least in his opinion—is substantially better than it was in the nursing home.

Mr. Griffin's income is limited to $996 per month in social security disability benefits. The cost of his certified nursing assistant is $52 per day. This is a small fraction—less than a third—of the cost of the nursing home but still much more than Mr. Griffin can pay. He has survived financially since moving out because he received limited Medicare benefits and support from friends and

family, but the Medicare benefits have expired and his friends and family cannot carry the expense.  He has moved for a preliminary injunction requiring the state to provide Medicaid coverage for the certified nursing assistant.

## II.  Preliminary Injunction Standards

Entry of a preliminary injunction is governed by a well established four-factor test, under which the moving party must establish a substantial likelihood of success on the merits, that he or she will suffer irreparable injury unless the injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party, and that the injunction would not be adverse to the public interest.  *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *United States v. Lambert*, 695 F.2d 536 (11th Cir. 1983).

## III.  Likelihood of Success on the Merits

In *Olmstead v. Zimring*, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999), the United States Supreme Court made clear that a state violates the Americans with Disabilities Act if it unnecessarily isolates disabled individuals in institutions as a condition of providing them public assistance.  Isolation is unnecessary, for this purpose, if a state could provide the same assistance as effectively and efficiently in the community without fundamentally altering its public assistance program.  Lower courts of course have followed *Olmstead*.  *See,*

*e.g., Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004); *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175 (10th Cir. 2003).

In this action the plaintiffs assert that the State of Florida, through the defendant Secretary, is operating its Medicaid program in violation of the *Olmstead* principle by providing assistance to many disabled individuals only in nursing homes even though they could be treated as effectively—and less expensively—in the community.

While the issue is not free of doubt, I conclude that Mr. Griffin, at least, is likely to prevail on this claim. The Secretary says that Mr. Griffin cannot receive the care he needs in the community, but for purposes of the preliminary-injunction motion, my finding of fact is to the contrary. The finding draws support not only from expert testimony but from two additional considerations. First, Mr. Griffin has in fact been receiving the care he needs in the community. The Secretary's argument that it cannot be done thus falls flat. And second, common sense and experience suggest there is nothing that can be done for Mr. Griffin in the nursing home that cannot also be done in his apartment complex. Indeed, this is true of most if not all services provided in nursing homes for most if not all patients.

The real issue thus is not whether care can be provided in the community or even the quality of that care, but how the care can reasonably and economically be delivered. For Mr. Griffin standing alone, the issue is easy. He has found

providers, and the cost to the Medicaid program will be some $3,700 less per month than the cost of providing the same services in the nursing home. The same undoubtedly would be true for many other nursing home residents.

There are two other categories of Medicaid beneficiaries, however, who render the issue much more difficult. First, there undoubtedly are some nursing home residents who could receive care in the community only at considerably higher expense. The Secretary notes, correctly, that she must treat all comers fairly; she cannot provide special accommodations to Mr. Griffin that will not be provided to others in the same circumstances. Lines can be drawn based on feasibility and expense, but doing so imposes administrative burdens. At some point, adding administrative burdens can fundamentally alter a program.

Second, and more significantly, there are undoubtedly individuals with disabilities who pay for their own services because they wish to live in the community; these individuals thus forego Medicaid benefits that are available only to nursing home residents. Indeed, for a short period, Mr. Griffin was such an individual. If the state must provide benefits to all such individuals, the cost may be substantial, thus fundamentally altering the program.

So the ultimate outcome of this litigation remains in doubt. Likelihood of success, for preliminary injunction purposes, is an early prediction. On balance, the best early prediction is that Mr. Griffin will prevail.

## IV.  Irreparable Harm

If a preliminary injunction is not issued, Mr. Griffin will run out of money and will have to move back into the nursing home.  This will inflict an enormous psychological blow.  Also, because of the very substantial difference in Mr. Griffin's perceived quality of life in the apartment as compared to the nursing home, each day he is required to live in the nursing home will be an irreparable harm.  And if Mr. Griffin gives up his apartment, which is in an accessible and subsidized complex for persons with disabilities, he may not get it back, even if he ultimately prevails in this litigation.  In short, if a preliminary injunction is not issued, Mr. Griffin will suffer irreparable injury.

## V.  Balance of Hardships

Entry of a preliminary injunction will cause the Secretary no harm at all.  To the contrary, she will save some $3,700 per month while the litigation goes forward by providing Mr. Griffin assistance in the community rather than in the nursing home.  And in any event, the harm to Mr. Griffin if an injunction is not issued will be much greater than any harm to the Secretary from its issuance.

## VI. Public Interest

The public interest favors issuance of the preliminary injunction.  Mr. Griffin will remain in the community rather than be isolated in the nursing home.  This is what Congress intended when it adopted the Americans with Disabilities

Act. If, as it ultimately turns out, treating individuals like Mr. Griffin in the community would require a fundamental alteration of the Medicaid program, so that the Secretary prevails in this litigation, little harm will have been done. To the contrary, Mr. Griffin's life will have been better, at least for a time, and the Medicaid program will have saved some money.

It is true, as the Secretary says, that benefits ought not be provided just to those who bring lawsuits or file motions for preliminary injunctions. But neither should benefits that appear to be warranted be delayed while the lawsuit goes forward. Some unevenness is an inevitable result of the uncertainty inherent in litigation of this type. The public interest supports entry of the injunction.

## VII. Security

Finally, the Secretary has agreed that because of his indigency, Mr. Griffin ought not be required to post security as a condition of the preliminary injunction. At least two circuits have approved dispensing with security for indigent plaintiffs who are otherwise entitled to preliminary injunctive relief. *See Pharmaceutical Society, Inc. v. Dep't of Social Services*, 50 F.3d 1168, 1174 (2d Cir. 1995) (waiving the bond requirement for indigent plaintiffs suing to enforce the public interest arising out of comprehensive federal health and welfare statutes); *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991) (upholding waiver of the bond requirement where suit was brought to enforce compliance with the Medicaid Act).

## VIII.  Conclusion

For these reasons,

IT IS ORDERED:

The plaintiff Clayton Griffin's motion for a preliminary injunction (document 123) is GRANTED.  The defendant Holly Benson, in her capacity as Secretary of the Florida Agency for Health Care Administration, is ordered to provide Medicaid benefits to Mr. Griffin—while he resides in the community—covering (a) four hours of personal attendant care per day, (b) isolated emergency personal attendant care, and (c) the same outside medical care that would be covered if Mr. Griffin remained in a nursing home.

SO ORDERED on October 14, 2008, *nunc pro tunc* September 30, 2008.

s/Robert L. Hinkle
Chief United States District Judge
